UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LUIS MEDELLIN, BENIGNO AGUILAR, ELIAZAR OCHOA, and RODOLFO OLIVARES, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> EXPRESS PAYROLL, INC.; ROBERT WAYNE HUTTO d/b/a A&W SERVICES; NABORS CORPORATE SERVICES, INC. and NABORS INDUSTRIES, INC., <br><br> Defendants. | § § § § § § § § § § § § § § § § § § § | No. _____ <br><br> JURY TRIAL DEMANDED |

## **PLAINTIFFS' ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Plaintiffs Luis Medellin, Benigno Aguilar, Eliazar Ochoa, and Rodolfo Olivares (collectively referred to as "Plaintiffs") bringing this collective action and lawsuit on behalf of and all other similarly situated employees to recover unpaid overtime wages from Defendants Express Payroll, Inc.[1]; Robert Wayne Hutto d/b/a A&W Services[2]; Nabors Corporate Services, Inc.[3] and Nabors

---

[1] Express Payroll, Inc. is sometimes referred to as "Express Payroll."

[2] Robert Wayne Hutto d/b/a A&W Services is sometimes referred to as "A&W Services."

[3] Nabors Corporate Services, Inc. and Nabors Industries, Inc. are sometimes collectively referred to as "Nabors."

Industries, Inc.[4] (collectively referred to as "Defendants"). In support thereof, they would respectfully show the Court as follows:

## I. Nature of Suit

1. Plaintiffs' claims arise under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219 ("FLSA").

2. The FLSA was enacted to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers …." 29 U.S.C. § 202(a). To achieve its humanitarian goals, the FLSA defines appropriate pay deductions and sets overtime pay, minimum wage, and recordkeeping requirements for covered employers. 29 U.S.C. §§ 206(a), 207(a), 211(c).

3. Defendants violated the FLSA by employing Plaintiffs and other similarly situated nonexempt employees "for a workweek longer than forty hours [but refusing to compensate them] for [their] employment in excess of [forty] hours … at a rate not less than one and one-half times the regular rate at which [they are or were] employed." 29 U.S.C. § 207(a)(1).

4. Defendants violated the FLSA by failing to maintain accurate time and pay records for Plaintiffs and other similarly situated nonexempt employees as required by 29 U.S.C. § 211(c) and 29 C.F.R. pt. 516.

---

[4] *Id.*

5. Plaintiffs bring this collective action under 29 U.S.C. § 216(b) on behalf of and all other similarly situated employees to recover unpaid overtime wages.

## II. Jurisdiction & Venue

6. The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) because it arises under the FLSA, a federal statute.

7. Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the Houston Division of the Southern District of Texas

## III. Parties

8. Luis Medellin is an individual who resides in Harris County, Texas and who was employed by Nabors and Express Payroll during the last three years.

9. Benigno Aguilar is an individual who resides is an individual who resides in Harris County, Texas and who is currently employed by Nabors and Express Payroll.

10. Eliazar Ochoa is an individual who resides in Harris County, Texas and who was employed by Nabors and Express Payroll during the last three years.

11. Rodolfo Olivares is an individual who resides in Harris County, Texas and who was employed by Nabors and A&W Services during the last three years.

12. Express Payroll, Inc. is a Texas corporation that may be served with process by serving its registered agent: Henry R. Link, at 7662 N. Highway 287, Tennessee Colony, Texas 75861. Alternatively, if the registered agent of Express

Payroll, Inc. cannot with reasonable diligence be found at the company's registered office, Express Payroll, Inc. may be served with process by serving the Texas Secretary of State pursuant to TEX. BUS. ORG. CODE § 5.251 AND TEX. CIV. PRAC. & REM. CODE § 17.026.

13. Robert Wayne Hutto d/b/a A&W Services is an individual who may be served with process at 1007 Weeping Willow Way, Magnolia, Texas 77354-1585 or 919 Wood Haven Drive, Rock Springs, Wyoming, 82901-4348 or wherever he may be found.

14. Nabors Corporate Services, Inc. is a Delaware corporation that may be served with process by serving its registered agent: CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. Alternatively, if the registered agent of Nabors Corporate Services, Inc. cannot with reasonable diligence be found at the company's registered office, Nabors Corporate Services, Inc. may be served with process by serving the Texas Secretary of State pursuant to TEX. BUS. ORG. CODE § 5.251 AND TEX. CIV. PRAC. & REM. CODE § 17.026.

15. Nabors Industries, Inc. is a Delaware corporation that may be served with process by serving its registered agent: CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. Alternatively, if the registered agent of Nabors Industries, Inc. cannot with reasonable diligence be found at the company's registered office, Nabors Industries, Inc. may be served with process by serving the Texas Secretary of State pursuant to TEX. BUS. ORG. CODE § 5.251 AND TEX. CIV. PRAC. & REM. CODE § 17.026.

16. Whenever it is alleged that any individual defendant committed any act or omission, it is meant that company's officers, directors, vice-principals, agents, servants or employees committed such act or omission and that, at the time such act or omission was committed, it was done with the full authorization, ratification or approval of the individual defendant or was done in the routine and normal course and scope of employment of the company's officers, directors, vice-principals, agents, servants or employees.

### IV. Facts

17. According to its website, Nabors "owns and operates the world's largest land-based drilling rig fleet" and provides related services to its customers in the oilfield industry; it does business in the territorial jurisdiction of the Court.

18. With the help of other companies (e.g., Express Payroll and A&W Services), Nabors systematically deprives workers of their statutory rights to overtime pay under the FLSA.

19. The scheme works like this: Nabors uses the same group of welders, which include Medellin, Aguilar, Ochoa, and Olivares, to build or refurbish drilling rigs at locations (some of which it owns and others it leases but all of which it controls) across the country.

20. At each location, there is a different middleman (and sometimes more than one), who is the nominal welding contractor.

21. The middleman, though, does not actively seek out any welders.

22. Instead, Nabors essentially prescreens the welders and sends them with instructions to offer their services at the locations where it needs them.

23. Often, individual welders know what company they will be working for before the company even knows about the welder.

24. When they get on location, the welders sign "independent contractor" agreements with the middlemen, precisely as they had done at the Nabors job they just previously left.

25. The role of the middlemen—in this case, Express Payroll, A&W Services and others—was primarily administrative.

26. For example, they maintained employment records for the welders, decided how and when to pay them (with a healthy dose input from Nabors), handled complaints (involving, for example, pay, coworkers, equipment and safety), conducted some training, promulgated worksite safety rules, reported income to the Internal Revenue Service, etc.

27. Nabors, on the other hand, controlled the welders' work, including their schedules and other conditions of their employment.

28. For example, Nabors told the welders, on a daily basis, where they would be working, what they would be doing, how to do it, what equipment they would be using, and the individual(s) to whom they would be reporting.

29. And, from time to time, Nabors also handled complaints from the welders.

30. Nabors was additionally responsible for inspecting and approving the welders' work.

31. For work that was not approved, Nabors told the welders how to fix what they had done.

32. The locations where the work was performed were owned and/or controlled by Nabors and the middlemen it used as part of its scheme to circumvent the FLSA.

33. Most of the equipment and materials that the welders used were purchased, owned and/or controlled by Nabors and the middlemen.

34. During their employment with Nabors and the middlemen, the rig welders could not work for anyone else; they worked exclusively for Nabors and the middlemen.

35. Nabors and the middlemen could hire, fire, or refuse to hire the rig welders.

36. In short, Nabors and the middlemen jointly employed the welders, who travel across the country working on Nabors rigs up to this day.

37. And while the nominal source of their funds changed with each jobsite from Express Payroll to A&W Services, for example—no doubt to obscure the fact that Nabors was a statutory employee of the rig welders—their longest, most important relationship was with Nabors, and it lasted, in some cases, for more than a decade.

38. Since the filing of this and a related case, Nabors has compiled a list of rig welders who are pursuing claims for unpaid overtime wages against the company.[5]

39. It uses the list to discriminate against the welders during the hiring process.

40. Specifically, Nabors tells the rig welders that, if they are participating in any lawsuit against the company, it will not hire them unless they provide proof that they have dismissed their claims.

41. Express Payroll[6] is a payroll services company; it is one of the middlemen used by Nabors in furtherance of its illegal independent contractor scheme and does business in the territorial jurisdiction of this Court.

42. A&W Services is a contract labor and shipping company; it is one of the middlemen used by Nabors in furtherance of its illegal independent contractor scheme and does business in the territorial jurisdiction of this Court.

43. Nabors and Express Payroll employed Medellin as a rig welder from November 2016 to January 2017.

44. Nabors and Express Payroll currently employ Aguilar as a rig welder.

---

[5] The related case is *Diaz v. Applied Machinery Corp.*, 4:15-cv-01282 (S.D. Tex. filed May 13, 2015) (Lake, J.).

[6] Express Payroll and Nabors have been sued multiple times by other victims of their illegal contractor scheme. *See Standley v. Nabors Indus., Inc.*, No. 4:14-cv-02057 (S.D. Tex. filed Jul. 18, 2014) (Hoyt, J.); *Barton v. Nabors Indus., Ltd.*, No. 6:15-cv-00733 (E.D. Tex. filed Aug. 7, 2015) (Mitchell, Mag. J.); *Calderon v. Nabors Drilling Tech. USA, Inc.*, No. 4:17-cv-00710 (S.D. Tex. filed Mar. 6, 2017) (Rosenthal, J.).

45. Nabors and Express Payroll employed Ochoa as a rig welder from 2013 to 2016.

46. Nabors and A&W Services employed Olivares as a rig welder from November 2016 to February 2017.

47. During Plaintiffs' employment with Defendants, they were engaged in commerce or the production of goods for commerce.

48. During Plaintiffs' employment with Defendants, each company had employees engaged in commerce or in the production of goods for commerce.

49. During Plaintiffs' employment with Defendants, each company had employees handling, selling or otherwise working on goods or materials that had been moved in or produced for commerce by others.

50. During Plaintiffs' employment with Defendants, each company had an annual gross volume of sales made or business done of at least $500,000.

51. Defendants paid Plaintiffs on an hourly basis.

52. During Plaintiffs' employment with Defendants, they regularly worked in excess of forty hours per week.

53. Defendants knew or reasonably should have known that Plaintiffs worked in excess of forty hours per week.

54. Defendants did not pay Plaintiffs overtime "at a rate not less than one and one-half times the regular rate at which he [was] employed." 29 U.S.C. § 207(a)(1).

55. Instead, Defendants paid Plaintiffs at their normal hourly rates for all of the hours they worked.

56. In other words, Defendants paid Plaintiffs for their overtime at a rate less than one and one-half times the regular rate at which they were employed in violation of the FLSA.

57. Defendants knew or reasonably should have known that Plaintiffs were not exempt from the overtime provisions of the FLSA.

58. Defendants failed to maintain accurate time and pay records for Plaintiffs as required by 29 U.S.C. § 211(c) and 29 C.F.R. pt. 516.

59. Defendants knew or showed a reckless disregard for whether their pay practices violated the FLSA.

60. Nabors retaliated against Plaintiffs for pursuing claims for unpaid overtime wages against the company.

61. Defendants are liable to Plaintiffs for their unpaid overtime wages, back pay, front pay, emotional distress damages, punitive damages, liquidated damages and attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

62. All rig welders employed by Nabors are similarly situated to Plaintiffs because they (1) have similar job duties; (2) regularly work in excess of forty hours per week; (3) are not paid overtime for the hours they work in excess of forty per week as required by 29 U.S.C. § 207(a)(1); (4) are being retaliated against for pursuing claims for unpaid wages in violation of 29 U.S.C. § 215(a)(3) and (5) are entitled to recover their unpaid overtime wages, back pay, front pay, emotional

distress damages, punitive damages, liquidated damages and attorney's fees and costs from Defendants pursuant to 29 U.S.C. § 216(b).

## V. Count One—
### Failure to Pay Overtime in Violation of 29 U.S.C. § 207(a)
### (Express Payroll, A&W Services & Nabors)

63. Plaintiffs adopt by reference all of the facts set forth above. *See* FED. R. CIV. P. 10(c).

64. During Plaintiffs' employment with Defendants, they were nonexempt employees.

65. As a nonexempt employees, Defendants were legally obligated to pay Plaintiffs "at a rate not less than one and one-half times the regular rate at which [they were] employed[]" for the hours that they worked over forty in a workweek. 29 U.S.C. § 207(a)(1).

66. Defendants did not pay Plaintiffs overtime "at a rate not less than one and one-half times the regular rate at which [they were] employed." 29 U.S.C. § 207(a)(1).

67. Instead, Defendants paid Plaintiffs at their normal hourly rate for all of the hours they worked.

68. In other words, Defendants paid Plaintiffs for their overtime at a rate less than one and one-half times the regular rate at which they were employed in violation of the FLSA.

69. If Defendants classified Plaintiffs as exempt from the overtime requirements of the FLSA, they were misclassified because no exemption excuses the companies' noncompliance with the overtime requirements of the FLSA.

70. Defendants knew or showed a reckless disregard for whether their pay practices violated the overtime requirements of the FLSA. In other words, Defendants willfully violated the overtime requirements of the FLSA.

## VI. Count Two—
### Failure to Maintain Accurate Records in Violation of 29 U.S.C. § 211(c)
### (Express Payroll, A&W Services & Nabors)

71. Plaintiffs adopt by reference all of the facts set forth above. *See* Fed. R. Civ. P. 10(c).

72. The FLSA requires employers to keep accurate records of hours worked by and wages paid to nonexempt employees. 29 U.S.C. § 211(c); 29 C.F.R. pt. 516.

73. In addition to the pay violations of the FLSA described above, Defendants also failed to keep proper time and pay records as required by the FLSA.

## VII. Count Three—
### FLSA Retaliation in Violation of 29 U.S.C. § 215(a)(3)
### (Nabors)

74. Plaintiffs adopt by reference all of the facts set forth above. *See* Fed. R. Civ. P. 10(c).

75. The FLSA prohibits any person from discharging or in any other manner discriminating against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to

the FLSA. 29 U.S.C. § 215(a)(3); *see also* 29 U.S.C. § 157 (employees may engage in protected concerted activity); TEX. LAB. CODE § 52.031 (blacklisting prohibited).

76. In addition to the pay violations described above, Nabors violated the FLSA by blacklisting the rig welders who are pursuing claims for unpaid overtime wages against the company. *Id*.

77. As a result, Nabors is liable to the rig welders "for such legal or equitable relief as may be appropriate to effectuate the purposes of [the anti-retaliation provisions of the FLSA], including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

### VIII. Count Four—Collective Action Allegations

78. Plaintiffs adopt by reference all of the facts set forth above. *See* Fed. R. Civ. P. 10(c).

79. On information and belief, other employees have been victimized by Defendants' violations of the FLSA identified above.

80. These employees are similarly situated to Plaintiffs because, during the relevant time period, they held similar positions, were compensated in a similar manner, were denied overtime wages at one and one-half times their regular rates for hours worked over forty in a workweek and retaliated against for pursuing claims for unpaid overtime wages.

81. Defendants' policies or practices of failing to pay overtime compensation and retaliation are generally applicable policies or practices and do not depend on the personal circumstances of the putative class members.

82. Since, on information and belief, Plaintiffs' experiences are typical of the experiences of the putative class members, collective action treatment is appropriate.

83. All employees of Defendants, regardless of their rates of pay, who were paid at a rate less than one and one-half times the regular rates at which they were employed for the hours that they worked over forty in a workweek or who were retaliated against for pursuing claims for unpaid overtime wages are similarly situated. Although the issue of damages may be individual in character, there is no detraction from the common nucleus of liability facts. The classes are therefore properly defined as:

> All rig welders employed and/or jointly employed by Express Payroll and Nabors during the last three years (referred to as the "Express Payroll/Nabors Class");

> All rig welders employed and/or jointly employed by A&W Services and Nabors during the last three years (referred to as the "A&W Services/Nabors Class"); and

> All rig welders who were denied employment by Nabors for pursuing claims for unpaid overtime wages during the last three years (referred to as the "Retaliation Class").

84. With respect to the unpaid overtime claims, Defendants are liable to Plaintiffs and the other rig welders for the difference between what it actually paid them and what it was legally obligated to pay them.

85. With respect to the retaliation claims, Nabors is liable to Plaintiffs and the other rig welders for such legal or equitable relief as may be appropriate to effectuate the purposes of the anti-retaliation provisions of the FLSA, including without limitation employment, reinstatement, promotion, emotional distress damages, punitive damages, back pay, front pay and an additional equal amount as liquidated damages.

86. Because Defendants knew and/or showed a reckless disregard for whether its pay practices violated the FLSA, the companies owe Plaintiffs and the other rig welders damages for at least the last three years.

87. Defendants are liable to Plaintiffs and the other rig welders in an amount equal to their actual damages as liquidated damages.

88. Defendants are liable to Plaintiffs and the other rig welders for their reasonable attorneys' fees and costs.

89. Plaintiffs have retained counsel who are well versed in FLSA collective action litigation and who are prepared to litigate this matter vigorously on behalf of them and all other putative class members.

## IX. Jury Demand

90. Plaintiffs demand a trial by jury.

## X. Prayer

91. Plaintiffs pray for the following relief:

   a. an order allowing this action to proceed as a collective action under 29 U.S.C § 216(b);

   b. judgment awarding Plaintiffs and the other rig welders all unpaid overtime wages, back pay, front pay, emotional distress damages, punitive damages, liquidated damages and attorney's fees and costs;

   c. prejudgment interest at the applicable rate;

   d. postjudgment interest at the applicable rate;

   e. incentive awards for any class representative(s); and

   f. all such other and further relief to which Plaintiffs and the other rig welders may show themselves to be justly entitled.

Respectfully submitted,

SEARS & CRAWFORD, LLP

By: s/ Ross A. Sears, II w/p MAM
    Ross A. Sears, II
    State Bar No. 17960011
    Federal Id. No. 17626
    1200 Rothwell Street
    Houston, Texas 77002
    Telephone: (713) 223-3333
    Facsimile: (713) 223-3331
    Email: ross@searscrawford.com

**ATTORNEYS FOR PLAINTIFFS**

Respectfully submitted,

MOORE & ASSOCIATES

By: /s/ Melissa Moore
    Melissa Moore
    State Bar No. 24013189
    Federal Id. No. 25122
    Curt Hesse
    State Bar No. 24065414
    Federal Id. No. 968465
    Lyric Centre
    440 Louisiana Street, Suite 675
    Houston, Texas 77002
    Telephone: (713) 222-6775
    Facsimile: (713) 222-6739

**ATTORNEYS FOR PLAINTIFFS**